IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ADAM WHITT,

      Plaintiffs,

v.                                                                          Case No. 3:05cv248/LAC

Q AND I, INC., D/B/A BEDLAM TOP
OF THE TOWN; CHRIS DAVIS; and
CITY OF PENSACOLA,

      Defendants.

_____/

## ORDER DENYING SUMMARY JUDGMENT

      Pending before is Defendant Chris Davis's motion for summary judgment (doc. 22),
alongside which he also asserts that he is entitled to qualified immunity from suit.  Plaintiff
timely filed a memorandum and evidentiary materials in opposition (docs. 25-26).  The Court
has taken summary judgment under advisement and is now prepared to rule on Defendant's
motion.  For the reasons stated below, Defendant's motion for summary judgment is denied.

# I. BACKGROUND

Plaintiff Adam Whitt, a Naval Officer, and two other fellow officers entered Bedlam Nightclub during the early hours of December 6, 2003, and went up to the third floor of the bar.  Whitt was evidently intoxicated as his blood alcohol level was later measured at the hospital at .28, and he has little memory of the altercation that ensued at the bar.

According to Michael Sims, employed by Bedlam as a "bouncer," he was informed that the bartender had refused to provide Whitt any more alcohol, evidently because of Whitt's intoxication.  Sims then informed Chris Davis, a City of Pensacola Police Officer who was in uniform at the bar and employed by the nightclub, that he needed Davis' assistance because Whitt had been "cut-off" and "it's time for him to leave."  According to Whitt and the other officers,[1] Davis then approached Whitt from behind and grabbed ahold of Whitt's arm.  Unable to see who had grabbed him, Whitt pulled back as a matter of reflex, whereupon Davis seized Whitt and forced him down to the floor.  According to the two officers,[2] this happened quite rapidly, with Davis apprehending Whitt and "slamming" him to the floor without pause.  Whitt's head hit the floor with an audible sound, and he did not appear conscious.  Davis slapped Whitt several times while Whitt was on the floor, in an unsuccessful attempt to revive him.  Davis then dragged Whitt down the stairs and out of the

[1] Defendant offers a different version of the altercation that followed, but of course the Court must defer to Plaintiff's version of the facts while under summary judgment review.

[2] Whitt himself stated he had very little recollection of the altercation.

nightclub; Whitt remained unconscious.  Davis found Whitt's identification and, after determining that he was a Naval Officer, "gasped" and then asked an employee, evidently Sims, why he hadn't mentioned to him that Whitt was an officer.

The other officers asked if they could take Whitt home, but Davis stated that he could not release him because he was injured and that he would have to arrest Whitt in order to protect himself.  An ambulance subsequently arrived and transported Whitt to the hospital where he eventually awoke.  Whitt sustained injuries all about his face and head and his knees and shins, but no permanent injuries.

Whitt and both his fellow officers state that at no time did anybody affiliated with the nightclub tell Whitt to leave the premises.  Moreover, not only does Defendant provide no evidence to countermand this testimony, the police report states that Whitt "was being provided more alcohol" when Davis approached him, which would appear to be inconsistent with Whitt being "cut off" and told to leave.  Doc. 22, ex. F.

Whitt subsequently filed the instant action which includes both claims raised under federal constitutional law and state law claims.  The instant motion seeks dismissal of the federal claims raised under 42 U.S.C. § 1983: Claim Three, which alleges a false arrest in violation of the Fourth Amendment; and Claim Four, which alleges a use of excessive force during the arrest, also in violation of the Fourth Amendment.

## II. Motion for Summary Judgment

### A. Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 249, 106 S. Ct. at 2510–11; *see also Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (finding that a court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party" when determining whether a genuine issue exists).

The party moving for summary judgment bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only when the moving

party has discharged this initial burden does the burden shift to the nonmoving party to demonstrate there is a genuine issue of material fact precluding summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the nonmoving party satisfies its burden of production and creates a genuine issue of material fact, then summary judgment must be denied. *See* FED. R. CIV. P. 56(c).

## B. Qualified Immunity

A government official performing a discretionary function within and acting within the scope of his official duties may defend against civil rights claims on the ground that he is entitled to qualified immunity. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004). It is well settled that "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). As a general proposition, "[i]t is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998). However, if an objectively reasonable officer in the same situation could have believed that the force used was not excessive, the defendant is entitled

to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638-41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Before qualified immunity is surrendered by an officer, he is entitled to fair and clear warning that the challenged conduct violates clearly established federal rights. *See Vinyard*, 311 F.3d at 1350-51. There are three categories in which this "fair and clear warning" may be supplied: 1) where the conduct is so egregious or the federal law is so clear that the conduct can be found to obviously violate federal rights, regardless of the absence of relevant case law; 2) where case law establishes a legal principle which can be applied broadly and with obvious clarity to certain conduct within a range of factual situations, into which the conduct in question falls; and 3) where no broad legal principle applies but there exists factual precedent in caselaw which cannot be fairly and materially distinguished from the conduct at hand. *Id.* at 1350-52. Regarding the third category, the relevant caselaw need not have materially identical facts, but the prior decisions must give reasonable warning that the conduct at issue constitutes a violation. Holloman, 370 F.3d at 1277 (quoting *United States v. Lanier*, 520 U.S. 259, 269, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997)).

### C. Discussion

It is clearly established that a law enforcement officer's use of excessive force during an arrest violates the Fourth Amendment. *See Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006). However, when a Fourth Amendment claim is founded upon an unlawful arrest,

any use of force used in carrying out the arrest is by its nature excessive and need not be separately proven.  *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000).  In this situation, "the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim."  *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) (citing *Jackson*, *supra*).  Thus, damages under an unlawful arrest claim would include those damages incurred as a result of the force used during the arrest.  *Id.*

Hence, the Court's first point of inquiry is to determine the validity of the arrest.  An arrest does not violate the Fourth Amendment if there existed probable cause for the arrest. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).  "For probable cause to exist, ... an arrest must be objectively reasonable based on the totality of the circumstances."  *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)).  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id.* (quoting *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)).

When qualified immunity is asserted as an affirmative defense, the standard becomes more stringent, for an officer is not liable so long as "arguable  probable cause" existed: that is, whether probable cause could have been arguably thought to exist in the eyes of a reasonable officer judging from the facts at hand and the clearly established law at the time. *See Pickens v. Hollowell*, 59 F.3d 1203, 1206 (11th Cir. 1995); *Von Stein v. Brescher*, 904

F.2d 572, 579 (11th Cir. 1990).  "Indeed, 'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable.'"  *Von Stein*, 904 F.2d at 579 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)). This allowance enables officers in an arrest situation to not have to err on the side of caution out of fear of being sued.  *See Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997).  However, an officer must conduct a reasonable investigation under the circumstances before determining whether probable cause exists.  *See Rankin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998); *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).

Under these guidelines, the Court concludes that probable cause did not even arguably exist to arrest Whitt.  Under Florida law, a warrantless arrest for trespass cannot be made unless the facts and circumstances known to the law enforcement officer are sufficient to warrant a substantial belief by a prudent person that every element of the crime has been committed.  *See State v. McCormack*, 517 So.2d 73, 74 (Fla. 3d DCA 1987); *State v. Yunker*, 402 So.2d 591, 593 (Fla. 5th DCA 1981).  The four elements necessary to constitute a trespass are: "1) wilfully entering upon or remaining in any property;  2) other than a structure or a conveyance;  3) without being authorized, licensed or invited; 4) where notice against entering or remaining is given either by actual communication to the offender or by posting, fencing or cultivation."  *Smith v. State*, 778 So.2d 329, (Fla. 2d DCA 2000).[3]  Thus,

---

[3]There is some question as to whether all elements of the crime must be committed in the officer's actual presence or whether the officer may rely on the surrounding facts and circumstances.

"when an invitation has been extended to enter an open business . . . actual communication is necessary to put a person on notice that he is no longer welcome on the pxroperty and may be arrested for trespass." *Id.* Before making an arrest for trespass, the officer must have "substantial reason" to believe that this warning has been delivered. *Yunker*, 402 So.2d at 593.

Clearly lacking in this case is record evidence to show that Plaintiff Whitt was provided the requisite notice or that Officer Davis was so informed. The only semblance of an indicator is the statement from Sims to Davis that it was "time for [Whitt] to leave." While that statement itself might have been true under the circumstances, it did not convey to Davis the information he needed to know to make the arrest; namely, that Whitt had been told to leave by someone in a position to do so. Based only on this information, a reasonable officer could not substantially believe that Whitt had already refused to leave and was therefore actively committing a trespass. Though Davis may have held this mistaken belief, it was simply unreasonable to have so concluded without further investigation into the matter.

Likewise, the Court finds probable cause lacking to arrest Whitt for the crime of resisting arrest without violence, the elements of which include 1) that a law enforcement officer be engaged in the lawful execution of an arrest or other legal duty; and 2) that the action by the defendant constitute obstruction or resistance of that lawful duty. *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1315 (11th Cir. 2003) (collecting cases under

---

*See McCormack, Yunker, and Smith, supra.* The Court need not resolve this question, however, because its ruling would not change with either result.

Florida law). However, a further requirement is that the arrest be lawful. *Jay v. State*, 731 So.2d 774, 775 (Fla. 4th DCA 1999). "If an arrest is not lawful, then a defendant cannot be guilty of resisting it." *Id.* (citing *In re T.M.M.*, 560 So.2d 805, 807 (Fla. 4th DCA 1990). As has been discussed, Whitt's arrest for trespassing was unlawful; therefore, he cannot be found to have committed the crime of resisting the arrest, and, knowing this, no reasonable officer could thereby conclude that he had probable cause to make such an arrest.

Furthermore, even if probable cause had existed, Whitt did not have any knowledge that Davis was placing him under arrest at the time Whitt allegedly resisted. It is also required element for the charge of resisting arrest without violence that the suspect be aware that he is being detained and that it is indeed an officer who is effectuating the arrest. *See Cooper v. State*, 742 So.2d 855, 857-58 (Fla. 1st DCA 1999); *Robinson v. State*, 667 So.2d 384, 386 (Fla. 1st DCA 1995). Under Whitt's version of the facts, he had no inkling that the person apprehending him from behind was a police officer, much less whether his apprehension was pursuant to an arrest.

Accordingly, the Court finds that arrest was not lawful as to either charge, and therefore the force exerted upon Whitt was excessive under the Fourth Amendment. However, Whitt also asserts in Claim Four that, regardless of the lawfulness of the arrest, the amount of force exerted by Officer Davis was excessive. Thus, to analyze this claim, the Court assumes that the arrest was otherwise lawful and evaluates the use of force during the arrest to determine whether it was excessive under the well-established Fourth Amendment

reasonableness standard. *See Jackson v. Sauls*, 206 F.3d 1156, 1167 (11th Cir. 2000) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The Court must consider whether the officer's actions were objectively reasonable in light of the facts and circumstances surrounding him at the time, rather than through the lens of hindsight. *See Kesinger v. Harrington*, 381 F.3d 1243, 1248 (11th Cir. 2004); *Draper v. Reynolds*, 369 F.3d 1270, 1277 (11th Cir. 2004) (citations omitted).

To determine whether the force used was reasonable, the Court considers 1) the need for the application of force, 2) the relationship between that need and amount of force used, and 3) the extent of any resulting injury. *See Id*. at 1277-78; see also *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002). The need for the application of force is evaluated by whether the use of force used was reasonably proportionate to the need for that force, taking into account the severity of the crime, whether the suspect posed an immediate danger to the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (quotations omitted; *see also Draper*, 369 F.3d at 1277, n.13.

It is also well-settled that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *Durruthy*, 351 F.3d at 1094. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments

– in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The Court concludes under the facts of this case that the amount of force Davis used upon Whitt was excessive and that no reasonable officer in Davis's shoes would have perceived the need to use such force. This conclusion is largely based upon the finding that there appeared to be no need for the use of force whatsoever. Absent from the record, construed as it is in favor of the nonmoving party,[4] is any indication that Whitt might have been dangerous or belligerent or that the situation otherwise warranted Whitt's immediate ejection from the premises by force. Equally, there was no indication that Whitt would not respond peaceably to Officer Davis if given the opportunity to recognize him as an officer. Although Defendant makes much of the fact that Whitt pulled back his arm when Davis grabbed it, thereby "resisting" Davis, the record shows that those around Whitt saw his reaction as reflexive and without knowledge that the person clutching him was an officer. Rather than give Whitt an opportunity to respond with compliance, Davis snuck up on him from behind, grabbed him, and then immediately forced him down onto the floor, causing the injuries previously described. This was not an insignificant application of force, and it was one from which a reasonable factfinder could readily conclude that the officer's objective was to forcibly take Whitt down from the start.

---

[4] It bears noting that, under Defendant's version of the facts, Whitt was described as somewhat more belligerent toward others in the bar and then toward Davis, and that Whitt was provided an opportunity to recognize that Davis was a police officer and to comply with his directives.

The Court therefore finds that Davis's actions amounted to an excessive use of force and also that it was clearly established at the time that his use of force, in a situation such as this where none was presently necessary, would constitute excessive in violation of the Fourth Amendment. *See Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000); *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998).

## III. SUMMARY

The Court's ruling in this matter may be summarized as follows, and IT IS HEREBY ORDERED:

1.   Defendant Chris Davis's motion for summary judgment (doc. 22) is **DENIED**.

**ORDERED** on this 24th day of January, 2007.

s/*L. A. Collier*
Lacey A. Collier
Senior United States District Judge